May it please the Court, my name is Benjamin Stein, and I represent the petitioner in this habeas corpus case involving immigration detention. I have reserved two minutes for rebuttal. English, I did you see at least on my schedule that Mr. Friday was also going to argue. Is that not true at this point? Or is that one person arguing? That client right now is going to be just arguing. All right, thank you. It is helpful for me to know that in advance. Thank you. As we informed the Court in our custody letter, we have received a bond duty in this case since the petition has been filed. However, this case has not moved. As a petitioner has a live stake in the determination that his detention is governed by 1226A. Because his detention is governed by 1226A, he is owed procedural protections under Rodriguez. He did not receive those protections. Because of this, he continues to have a wounded knee damage. He received a bond hearing, I'm not sure exactly where it is, but the burden was misapplied. We know it wasn't a Rodriguez hearing, and I can represent the judge said it was a hearing convention under 1231. So because he didn't receive the Rodriguez hearing, he continues to suffer injury, and I can trace back to the government's initial failure to properly recognize that the detention can only be derived from 1226A. I can get to the bottom of this. It relates to mootness, but only tangentially. So in your brief, there's a footnote 9 that basically says, well, whether there's prolonged detention, that's not before the Court. But the situation now for your client is that he has been in prolonged detention, correct? Yes. Okay, so you're both invoking Rodriguez, but then in footnote 9 suggesting, well, that's not even before the Court. The question is, if you're correct that he's entitled to this hearing, or if we read Rodriguez to mean that he's entitled to a hearing, under the standards articulated in Rodriguez, then why wouldn't his request for a hearing under 1226A be that request being moot? Yes, so in footnote 9, it was written at a time when prolonged detention was not an issue in the case. Today, prolonged detention is an issue in the case because it's an injury that's derived from the government's initial failure to recognize 1226A. In a habeas case, when a petitioner continues to suffer an injury that can be traced back to the initial injury, the Court may take actions to redress the injury that's been traced. In this case, addressing the injury that's been suffered, the lawful infringement upon his liberty is a result of the government's moot. What was missing from this hearing? What wasn't you given? Right, so at the hearing, so I had the bond decisions attached with the custody. He wasn't given, well, first off, the burden was misapplied. However, under your bold tooth in Rodriguez, I understand that the burden should be on the government to show about clear and convincing evidence to justify continued detention. What was missing that he wouldn't get, to the difference between Rodriguez and tooth, is an automatic bond hearing under Rodriguez, that's the reason I'm entitled to under tooth. Also, the government, the judge must take into account the amount of time that someone's been detained under Rodriguez, which is not an extent that doesn't get under tooth. And also, periodic six-month bond hearings, which shows exactly why he continues to have a life state in this. Because if he's not properly determined how much meter 1246, unless he's designated to Rodriguez, he's not going to get under bond hearings. So that's why it is criticizing that, I mean, it seems very odd that we would make this abstract determination of whether he's under 1226 or 1231, when we do have this circumstance that came to pass that he's now kind of in the clear sights of Rodriguez. So you're citing Rodriguez and the fact that the government should bear the burden, which it didn't in the hearing that he tended to have. So what I'm trying to figure out is why we should make a decision that's gone past, that's been blown past us time-wise, and why he shouldn't really be in Rodriguez and have a hearing pursuant to Rodriguez. Because even if the court was mistaken on 1226, time has passed, and he's now in the prolonged detention period. Yes. So we made the decision to enter a Rodriguez hearing, and the matters are asked of the court as an immediate Rodriguez hearing. So if we were to, I just want to kind of play it out a bit. And, of course, that's not really what was received as petitioned, understandably. But if either through remand or the court we were to say Rodriguez hearing, because he's now in extended detention, then it wouldn't matter under what statute he was being given the hearing, if Rodriguez was required to do one. Yes, Your Honor. So at this time, the court has not clarified that someone under 1231 is entitled to the procedural protections under Rodriguez. We have two, which suggests clearly that someone that's under 1231 should receive the same procedural protections as someone under 1226. But at this point, it hasn't been clarified by the court whether someone in 1231 under prolonged detention gets the same procedural protections as Rodriguez. And we would welcome such a finding. I believe it's a logical extension of the two. Well, my problem is that what's before the court now has changed from what was before the court. And before the court now is really what I'm struggling with. So I'm just seeing those. Yes, I understand that. And we maintain every single day that he's held without the correct procedural process of this can be regressed by habeas. And all of this injury arises under the initial failure by the government to recognize that this detention can only be derived from 1226. One last question, then. It can be determined by habeas where he should end up, you're saying. But the habeas I have in front of me is not that habeas. So procedurally, it would help me if you could tell me what you think this 48th Court has the authority to do and what it should do. Okay. So procedurally, in the context of the habeas, the court has this habeas. Habeas that we violated. So in the context of that habeas, we did react. We stated that the covering was lawfully deriving authority, deriving authority in 1231. We ask for all relief that's fair and equitable in our claim and our cause of action with regards to that determination. And in the context of the habeas petition, this court has wide equitable power to craft relief that can redress the injury. And today, he continues to suffer injury every day that he's detained without being owed the procedural protection that he's owed under 1226A. He continues to suffer injury, and the court may redress that injury by immediately, by ordering the government to immediately conduct a hearing under Rodriguez. Or if that's not conducted to the media, don't worry. It's police. But isn't that a hearing on the merits? Yeah, a hearing on the merits on February 14th in Las Vegas. And do we have a result of that yet? That is currently pending. Okay. And that would conclude everything. Well, in our opinion, under the plain statutory framework, even when someone is granted withholding, they continue to be detained under 1226A because there's still a decision pending on whether the non-citizen is to be removed from the United States. And that implies we have a policy step. The meritorian is going to do it? What's the judge going to decide in the meritorian? The meritorian is going to decide whether he has a reasonable fear when he returns to Philadelphia or it's not what he's really addressing. He needs to show that it's more likely than not that he will be. Right. So, regardless, that's a little to decide withholding, right? Yes. Okay. And if he decides that your client doesn't have that fear, what happens? Then he cannot be removed to El Salvador. But the government's position is that they can remove him at any time, anywhere else. And so that is even. In fact, the judge probably said what if they determined that he doesn't have that reasonable fear? Oh, if he does not have a reasonable fear. That's right. Then he can appeal to the Board of Immigration Appeals. And he remains in custody during that time. And that is exactly why a hearing under what is under 1226A or 1231 is a decision that's necessary right now. Because his case could take months. It could take years to resolve. And whether he's entitled to the periodic bond hearings under Rodriguez, which right now is only under 1226A, is essential to whether what is completely at stake, if he's a live stake in that. Yeah. Did you get a district court finding once that 1231 applied, right? That's right. And how was your position? Our position was that 1226A applied. That he was detained under 1226A because he doesn't have some additional authority. He had administratively final order and thus entered the removal period under 1231. Well, if we decided that the district judge was wrong and he should have followed what the government asked him to do under 1226, where are we then? The government maintains that he's detained under 1231. And we maintain he's under 1226. The government maintains that he's under 1231 because the government says he has a final order. We hope this goes against the tools of statutory construction that supports Chairman Ortiz-Alfaro, that an order is not administratively final or is final until there's been a conclusion of reasonable theory proceedings. And that's the issue we have before us. That is the issue before us, whether he's under 1226 or 1231. Well, let me ask you this. Didn't the Second Circuit make a decision on this issue? The Second Circuit ruled in our favor on this issue. And what has happened since then of any other circuits that has decided the issue? There have been no other circuits that have decided the issue. So what you want us to do is to send it back to the district judge and say that 1226 applies. We would like a finding that 1226 applies. That's the only issue before us. We, because of the nature of the habeas proceeding, and that every day. I don't have a habeas proceeding before me. The process, if you send it back to the district court, then we can order. So immediately order a volunteering. If we have a clear clear right on where it has to do or say, unless the wrong section is 1226, and let the district judge proceed from there, is that all you're really can request of us now? We, in the context of the belief that the Second Circuit has stressed in order to craft a global relief, we would welcome a finding of 1226 to be sent back to the district court. So excuse me, did the court and the district judge, because the district judge is closer to us. As a matter of fact, we've been criticized. We've tried to do it other ways. And I'm just wondering whether we have anything before us other than determining whether or not the district judge was correct in his determination or whether 1226 was. Is that your issue really? That is the issue. And we welcome a finding, whether just by this court, that the Second Circuit is correct, and that someone with ongoing withholding proceedings is proceeding pursuant to 1226A and not to 1231. And we would welcome a remand to the district court with that finding. And if we were to disagree with you and say it's 1231, then where would it go? If we say it's 1231, we would disagree with that finding. Yes. And we'd only have the Supreme Court left. Yes. Now, would you have that opportunity for some of their ABS and their readiness? We would have the opportunity, yes. If this court was defying the 1231 plan, we would still, in order for him to continue not suffering harm, we would need to find him 1231 equals 1226 in terms of Rodriguez so that we can ensure that he gets the Rodriguez protections. Yes. Not in front of us. No, if all we're determining is did the district court pick the right statute, not in front of us whether Rodriguez, 1231 is constant with Rodriguez or any other provisions, correct? No, Your Honor. The issue before this court is whether somebody with ongoing withholding resilience has an administratively fine order, is the same pursuant to 1226A or 1231. And we request that the court join the Second Circuit in finding that he's deputy detained pursuant to 1226A. One last question. I want to see some time for rebuttal. He did have a final order of removal. And he left the country. So, of course, he came back. When he came back, that final order of removal was reinstated, correct? Yes, one final order of removal from 2008. And then he has a reinstatement process that has not been completed. Well, when he came back, the government reinstated the order of removal. They didn't say, we reinstate a process. They said, we reinstate the order of removal, correct? They reinstated the order. So now he is always going to be subject to that order of removal, although execution of it may be suspended, correct? Your Honor, we believe so. When someone has a reinstated order that cannot become final because it's been accepted through the reinstatement process under regulation under 241.8E. Well, it's not a final order, but the only question is whether it's executed and how it's executed. This court has found an order so far. Forget order so far. That was a question of whether something is a final order for purposes of jurisdictional appeal. Isn't it true that it's the same order, the same order of removal that remains in effect? And the only question is, is it suspended from execution? We maintain that the reinstatement order is not going under regulation because the reinstatement proceedings have been interrupted by the exception. And the parties so far is persuasive in that even though it's the kind of jurisdictional review, I mean, tools of statutory construction reveal that the court's finality should be given the same meaning, the statute, in the same act. The same words should be given in the same text. And even apart from just statutory construction of the words in the statute, as the Second Circuit found, it's agency decision-making. It's the completion of agency decision-making that determines when the order is final, whether he's going to be removed from El Salvador. It's very much an issue in this case. And it depends on the completion of withholding proceedings. We know that the government can't effectuate the removal until withholding proceedings are completed. They haven't taken any steps to effectuate the removal. And this order cannot become final, both under a rejected final, which is a judicial review, but also under simple principles of agency decision-making. There's still a decision determination pending on whether he is to be removed from the United States. And as the Second Circuit found, the question is not whether he's theoretically removable. 1226 governs when the decision is whether someone is to be removed from the United States. Thank you. Good morning. May it please the Court. Brian Ward on behalf of Respondents. Your Honors, Mr. Padilla-Ramirez has a removed order that is not only final, but that has already been executed once when he was removed from El Salvador in 2010. He subsequently unlawfully ran to the United States, and DHS reinstated that removed order. He now has collateral proceedings, withholding only proceedings, to determine whether that removed order can be executed to El Salvador again. But nothing that happens in those collateral withholding only proceedings will affect the underlying finality of their removed order. The Congress was explicit about this when they enacted 8 U.S.C. 1231 Section A-5. Under 1231 Section A-5, it states that when someone has a final removal order, they illegally reenter, and DHS reinstates that removed order. That removed order is filed from the moment it's reinstated, and it's not subject to any reopening or any additional review. So whatever. So what we call the proceedings is now in. I understand it doesn't look like it fits the statute. But what do you call them? The proceedings. Correct? Yeah. So you didn't just shoot him out. You gave him an interview. He asked for an interview because he said, I've got additional information. I'm very afraid of going back to El Salvador based on my very, very recent experience. And you didn't say we don't care what you said. We're just going to shoot you back to El Salvador anyway because you've got a final order. You gave him an interview. Right? Correct. Okay. And the officer said, I don't know, this sounds pretty good. This may work. It may not. But it's worth going to an IJ. You didn't shoot him out then. And now you've got an hearing before an IJ, and you don't have a decision. What do you call all of this? So these are collateral proceedings. Correct? It's a collateral withholding of all the proceedings. And so. Where did that word collateral come from? Because I don't see that anywhere in the statute or writings. I think there's a, it comes from some of this court's case law in Prieto Romero, in Costas, and in Diaz. And so in those cases, some of those cases dealt with individuals who were bringing appeals to this court from the Court of Immigration Appeals, a final removal orders in this court, and addressing whether a person in that situation is detained under 1231 with a final order occurring at 1226, or if they're pre-final order. And what the court says, because there's a specific exception in section 1231 that says, a removal order becomes final either when it's administratively final, or when it's time for review before this court is passed. So there in 1231, section 8, it says that if this court has any conditions for review, and sees execution of that removal order, that that removal order is not final yet, and that the extension is covered by 1226A. Now all of those cases also address the possibility that conditions for review before this court, even in the case of the state of removal, doesn't necessarily make the removal order non-final. And so the example in the case of Diaz is where someone has final removal order, and it filed with the BIA, a motion to reopen that removal order. That motion to reopen it was denied, and then it was handed to the administrative side and appealed before this court. And the removal was stayed, and this court said in Diaz that because that was an appeal in a state, in a collateral manner, that it didn't transform that final order to pre-final order, and pre-final execution. So there's 1226A, and I just kind of want to walk through what this is. I'm sure we've got good names to call all these things, but it looks like he's kind of fallen between two sections and didn't anticipate how this was going to work. Fulton was opposed to the IJ fines in Mr. Diaz's favor. Fulton fines in his favor, and we now have an order of withholding. He will still have his final order of removal pending against him for the rest of his life. Yes, Your Honor. He doesn't have his final order of removal. He's got withholding. He does not, Your Honor. It prevents the execution of that order until Salvador, or for what period of time until what happens. So what would happen in that circumstance is that at some point is the basis for him seeking withholding or to change, if conditions were to change in the country, DHS would seek to reopen that withholding grant and have it canceled. But what would happen in that circumstance is that DHS would have the opportunity to try and find an alternate country to remove him to. So he has a final removal order, but since he has no legal remand of record to remain in the United States, the question now is just about where he can be removed to. But he can't go to El Salvador down the road, and he can't reasonably find him another country. He has to stay here, correct? So he is granted withholding or removal. He can't be removed to El Salvador. DHS can't find an alternate country. And I want to go back to the point of the distance fall between a number of sections. So when Congress passed 1231A.5, it placed withholding and detention authority within Section 1231. 1231 defines Section 8.1, when a removal order becomes final, and instead of Sections 8.2 and 8.6, it defines the detention authority of someone with a final removal order. 1231 also contains the provisions which cover in case of withholding only proceedings. So in Subsection B in 1231, the statute says that someone can't be removed, the non-citizen can't be removed, even with a final removal order, to a country where their life or freedom would be threatened. And in Subsection B.2, it provides the alternate countries where an individual can be removed to. So if you look at the Supreme Court's case law dealing with these removals to alternate countries, Zavidas being the case that talks about the constitutional limits of detention under 1231, in that case it dealt with an individual where DHS had gone through and tried to remove the individual to multiple places based on the final removal order. It appeared that the person was possibly stateless in that case. It didn't appear that they'd likely be able to remove them soon, but nonetheless, despite that fact that there wasn't a country where it appeared clear that he could be removed under that order, the Supreme Court didn't say that order's not final in your detention, it's not everybody's option in sex. Instead, he remained under 1231. Similar in the Supreme Court's case in JAMA v. ICE, which dealt specifically with this gift warranty of DHS to find alternate countries, the Supreme Court said under 1231 it provides explicitly that if the IJ orders removal to a particular country and for whatever reason, whether it's withholding a removal grant or because you can't get travel documents to that country or for some other reason, DHS gets the opportunity to go through the alternative list of countries to see if that person can be removed to another country. In those cases, the Supreme Court did say eventually, if it does appear there's going to be anywhere where that person can be removed to, there might be some constitutional limits under detention, but their removal order remains final and the authority for their removal remains in section 1231. So your position is, of course, to reconsist by removing immunity if it's anyone of today? Yes, although generally what happens is that because he has a removal order to El Salvador and he's been removed there once, generally what DHS will do is wait and see what happens in those proceedings. So what he had initially, when his order was reinstated and he addressed the fear of return to El Salvador, he was placed in reasonable fear of proceedings, which we said against the interview before a USCIS assignment officer. Now what that officer determines is only whether he has a reasonable possibility of raising a withholding claim, of raising the fear that his right of support will be threatened in El Salvador. What's talked about now, up to the point of where he's now in these proceedings before FHA, what if he loses those proceedings? Does he have a right of appeal to the PIA? He does, Your Honor. And then does he have a right of appeal from the PIA in order to the Ninth Circuit? Yes. This Court has found that it has jurisdiction to review that. So his, maybe it's a question of semantics, but his removal order or the execution of it is not final until if he were to lose the right to proceeding until the closure of the Ninth Circuit in the Niles, or would that be right? The execution of his removal order until El Salvador. Why do you ask? Because DHS could at any time decide to try and see if there's another country that will take him. And there's no need to be removed. He can be removed tomorrow if Mexico would take him. Potentially. At least, do we have to get an order that identifies Mexico as a potential country? No, Your Honor. As I said before, this Supreme Court case, I think JAMA is the key case, is that it removes alternative countries listed in 1231 and identify other countries. The regulations implementing that state that what the immigration judge's decision says it will off-order removal to one or to a few other countries. That doesn't limit their right to remove to another country. In practice, do we often remove from one country in Central America to another Latin American country? For simple examples. In practice, what generally happens is that DHS waits to see how the IJ rules. But it's obvious that the practice is, broadly, we haven't had too much success in asking other countries to take third-party country citizens. Correct? I wouldn't agree with that, Your Honor. I would say in practice that until the IJ rules, there's been no determination that they're not going to be able to execute this removal. We're asking generally. Is there a reason that we don't generally have much success of removing people to third countries? Generally, what happens is that DHS, I don't know if we can make that determination, but generally DHS doesn't get to that point until there's a final reaction from the ruling only. It's generally the practice of the government not to go to multiple countries and ask if they'll provide travel documents or accept a person for removal. You're begging the question. We're assuming that he's at the end of the line and he can't go back to El Salvador. So, let's go on to another question that I think was raised that I would like to understand. And that is, if he is under 1231, but he's now in a situation where he's in prolonged detention, what he's concerned about is that one, what is the standard of proof, and there's the word really, is the government or the petitioner, and would he get periodic review hearings? So, I'd appreciate your explanation to me. If we were to decide he's under 1226A, would he get periodic volunteerings? Yes, Your Honor. So, if his detention was under 1226A rather than 1231, he would have been able to get a volunteering initially, and then he would have to get a volunteering again every six months. That's the government's case in primary case. And under 1231? Under 1231, he gets post-mortem custody reviews. He's had a number of those. He'll have another one, I believe this summer in Asiopathy. It asks police to review his custody every three months in the interim. And then under 1231, the case that governs what's available for him, if his detention becomes prolonged, is to be reported to Houston's Bobby House. So, he could file as an inquiry. It becomes clear that there's unlikely to be, he's unlikely to be reviewed in the reasonably foreseeable future to anywhere. He could file a habeas, raising that claim, and just a court can address and evaluate whether he's likely to be removed or not. So, the court is saying as long as there is reasonable possibility that he'll be removed to a country in the reasonably foreseeable future, that 1231 detention is still authorized and doesn't raise constitutional concerns. But what about Rodriguez? How does that fit with 1231 and this individual? So, Rodriguez doesn't apply to people detained under 1231. So, in this court's most recent version of Rodriguez, the district court included 1231 in the class. In this court's decision, it eliminated that. Essentially saying because in that case, well, the definition of class involved people on direct review of the removal order. These were people with reinstated removal orders. And so, it said that there weren't, if those people had a review before this court and a stay, that they wouldn't be within 1231. So, I make one other point because I make one other question. He's going to begin. Thank you. What we have before us is which section applies. We've heard a lot about what's going to happen down the road. But when we make our decision, we have to decide which one of these two sections applies. Your distribution being clinical, there's no easy path in recording outline. He chose to go with your argument of 1226. But we do have second circumstances in case it weren't the other direction. Those are the only cases that have been cited to us. Has any other circuit made a determination? No, Your Honor. So, we have the choice of either following the second circuit or going a different way. We have held in Kelton that we will not create a circuit split unless there's a compelling reason to do so. And, of course, that applies especially to immigration because we need a national rule law. We don't need a lot of division. So, if we do follow what we said in Kelton before and that we would follow the second circuit unless there's a compelling reason to do otherwise, how would you argue that there is a compelling reason to follow as held by the District Court? Yes, Your Honor. So, I distinguish Garay in two ways. First, Garay said that his decision was under 1226A because 1226A talks about this decision about whether an alien is actually going to be removed from the United States. When someone is detained under a reinstated removal order under 1231A5, that decision has already been made. The decision has been made that they have no legal right to commit to the United States. The question is just where and when that removal order will be executed. The second point is that  found no deference to the regulations. DHS regulations say that an individual with a reinstated removal order should be detained under section 1231. The Court acknowledged that if the regulations had said that someone in Garay's position was subject to detention under 1231, that their review would have been limited in statute as to whether there was a principle interpretation. If you look at the regulation they're referring to in 8 CFR 241.8, I don't know how you read that regulation to say anything other than specifically a person with a reinstated removal order is detained under 1231. That provision governs reinstated removal orders 241.8. It was passed after Congress, it was promulgated after Congress enacted 1231 section A5 governing the reinstated removal orders. It specifically addresses the reinstatement. It talks about withholding only proceedings, so it acknowledged that this was a possibility that you would have a final order in withholding only proceedings. And it says ultimately that a person, the execution of that removal order and that person's detention will be conducted in accordance with this part. When it says this part, it's referring to part 141, and those are the regulations that govern and coincide with being able to detain under 1231. So these are the post-order regulations. There's a separate part, T36, which is a preference that corresponds to 1226A detention, and so in promulgating those regulations, essentially they said the regulations say the thing that Garrett said didn't find them to say that a person with a reinstated removal order even with withholding only proceedings is detained under section 1231. So for those reasons you would say there's a compelling reason not to agree with the Second Circuit because they're completely wrong about the actual regulations followed. We all do difference to the Second Circuit. We all do. As I said, the Second Circuit overlooked the overall statutory structure of 1231 and overlooked what specific part 241.8 is referring to. If we made that decision and agreed with you, then that would be the end of our duty and responsibility and you would carry it on from here at the government level. We don't have any reason to go into the various ratifications that may occur tomorrow. That's the only question we have before us is which one of those sections applied. Right, Your Honor. But, right, it's a detention under their section. There's separate case law to address those issues that we've been briefed because the execution reached that point in this case through the briefing. So all that's before the court is whether he is detained under 1231, as the government argues, as the district court found, or as Petitioner argues, section 1226. He wouldn't have a moot case, in other words, because he don't know the growing others of his bond hearing. Is that right? That's right, Your Honor. Under 1231, he wouldn't be entitled to essentially what Petitioner would be arguing is that he wants the rights that are associated with bond hearings and detention, so he wouldn't be detained under 1226A. Rodriguez would apply in those situations. The immigration judge here found that he was detained under 1231 and Rodriguez didn't apply. And so if this court was to reverse, he'd be entitled to different rights. We ask that this court agree with the district court judge. And the immigration judge found that he's not going to re-argue under the case that had to do with potential mootness. If we were to determine that 1231 is applicable, is this case moot because he had his bond hearing under 1231 and he wanted a bond hearing on his previous petition, or would we just not comment on that? If the court finds he's detained under 1231, then the court doesn't need to comment on that. Okay. Thank you, Your Honor. Thank you. Please. Mr. Stein. Thank you. Your Honor, if the respondents are going to say to the regulations, the 241.8 needs to be right in concert with 208.31B provided that time limits under 241.8 in each reasonable court proceedings are initiated in order to I'm sorry, could you just say which section you're citing in here? The two sections are 241.8 Correct. And then refer to the initiation of reasonable fair proceedings at 208.31B and you'll see that the reasonable fair proceedings are initiated upon notice. Apart from that, this court is held in causes that post custody reviews are insufficient procedural to process because they don't have neutral arbiters that can have the appeal this court is held in procedural to process. With regards to the statutory scheme, the government cannot represent that he's going to be removed. So where and what? The question before this court is whether he is to be removed. And that's why he's under 1226. There's only been a legal determination that he's erratically removable. The purpose and text of 1231 in the removal period is the government shall remove the non-citizen shall place an affirmative obligation on the government to remove the non-citizen and to have a final order placing him in the removal period at a time when the government simply cannot remove him does not comport with the purpose, text, and intent of Congress. And finally, with regards to even if this statutory text is clear, 236 and 241 work in concert to a linear path towards a detention statute but as the Second Circuit found, even if there was ambiguity, the regulation 241.8F assumes that there's a final order. They're assuming that it's a positive question in this case and for that reason, as the Second Circuit correctly found, the agency regulation is of no difference. Thank you. I would like to thank both of you for the very excellent arguments. You have an amazing band of statutes and regulations, both of you, and we really appreciate that. The case of Padilla-Ramirez v. Bible is submitted and we're adjourned for the morning. We will be back after a while. Thank you for your understanding. Counselor, welcome to stay because we won't be discussing any cases such as 26. We're adjourned.
judges: Wallace, McKeown, Bybee